**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ashley Ann Griffith, *et al.*,<br>Plaintiffs,<br>v.<br>Angie Rodgers, *et al.*,<br>Defendants. | No. CV-26-08014-PCT-JJT<br>**ORDER** |

At issue are *pro se* Plaintiffs Ashley Ann Griffith and Cameron David Alcantar's Motion for Preliminary Injunction (Docs. 3, 5, 19), to which Defendants Angie Rodgers, Leona Hodges, and Nicole Davis filed a Response (Doc. 25), Plaintiffs filed a Reply (Doc. 32), and Defendants filed a Sur-Reply with leave of Court (Doc. 34); Plaintiffs' "Motion for Leave to File Supplemental Evidence (Based on Materials Submitted April 28, 2026)" (Doc. 46); and Defendants' Motion to Dismiss (Doc. 26), to which Plaintiffs filed a Response (Doc. 38) and Defendants filed a Reply (Doc. 36). The Court finds it appropriate to resolve these Motions without oral argument. LRCiv 7.2(f).

## I. BACKGROUND

Plaintiffs' allegations in the Verified Complaint (Doc. 1, Compl.) and the evidence included in the parties' briefing on Plaintiffs' Motion for Preliminary Injunction (Docs. 19, 32, 34, 39) show the following. Since 2021, Plaintiffs as a single household have received federally funded Supplemental Nutrition Assistance Program (SNAP) benefits administered by the State of Arizona Department of Economic Security (DES). In June

2024, DES determined that it had overpaid Plaintiff Griffith for SNAP benefits between June and October 2022 and November 2022 and October 2023. Plaintiffs contested DES's determination of overpayment through the administrative appeal process. After a hearing on September 15, 2025, an administrative law judge (ALJ) issued a decision on October 7, 2025, affirming the finding that DES had overpaid Griffith but reducing Griffith's overpayment amount from $6,612 to $6,440—a $172 reduction. (Doc. 34-1 Ex. D5.) Plaintiffs submitted a Petition for Review with the DES Appeals Board, and after a hearing, the Appeals Board affirmed the overpayment determination on March 4 and 5, 2026. (Doc. 34-1 Exs. D6, D7.) Under Arizona law, Plaintiffs had the opportunity to appeal that decision to the Arizona Court of Appeals by April 3, 2026, as the Appeals Board informed them (Doc. 34-1 Exs. D6, D7), but Plaintiffs declined to do so.

Linda Schroeder, Support Operations Administrator for the Benefits Section of the Division of Benefits and Medical Eligibility at DES, avers that, in February 2025, "[a]lthough the Arizona Department of Revenue (the "DOR") initially intercepted Plaintiffs' tax refund in the total amount of $1,222.00, [DES] promptly informed the DOR that the full refund should be released to Plaintiffs due to their pending appeals of the overpayment determinations. At no time did any of Plaintiff's tax refunds reach [DES]." (Doc. 34-1 ¶ 9.) The Appeals Board considered this sequence of events in its decisions. (Doc. 34-1 Exs. D6 at 2, D7 at 2.)

Moreover, during the time Plaintiffs' appeal to the Appeals Board was pending, from December 2025 to April 2026, DES began to recoup overpaid benefits from Plaintiffs' SNAP benefits in the amount of $55 per month; over five months, DES recouped $275. (Compl. ¶ 18; Doc. 34-1 ¶ 14.) Due to what DES found to be an inadvertent error by way of premature collection of the recoupment, DES refunded the $275 recoupment to Plaintiffs on April 13, 2026. (Doc. 34-1 ¶ 19.) DES now declares that it "has instituted a new manual process to ensure that the type of error that occurred in this case is avoided in the future," and DES "has not taken and will not take steps to collect all or any part of the

$6,440.00 that is owed by Plaintiffs to [DES] until the action pending before this Court has been resolved." (Doc. 34-1 ¶¶ 20, 21.)

Based on these events, Plaintiffs allege in the Complaint that, while their administrative appeal was pending, "DES unlawfully garnished Plaintiffs' state tax returns and ongoing benefits despite an open appeal and Plaintiffs' explicit requests to pause collection activity." (Compl. ¶ 14.) Plaintiffs also point to what they term "procedural irregularities" in the administrative proceedings and DES's failure to accommodate Plaintiffs' disabilities including epilepsy and mental health conditions by not providing phone or text notices of upcoming hearings. (Compl. ¶¶ 17, 20, 21.) And Plaintiffs claim DES continues to "unlawfully" garnish or withhold benefits during the appeal process. (Compl. ¶ 18.)

Plaintiffs are now suing three DES officials, bringing claims (1) under the Declaratory Judgment Act, 28 U.S.C. § 2201, for the Court to "declare DES's ongoing garnishment practices and procedural misconduct unlawful and in violation of federal law and Plaintiffs' constitutional rights" (Compl. ¶ 23); (2) for "injunctive relief" (Compl. ¶ 24); and (3) under 42 U.S.C. § 1983, for procedural due process violations under the 14th Amendment and for violations of their rights under the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* (Title II of the ADA) (Compl. ¶ 25). Plaintiffs seek injunctive relief including a cessation of garnishment of their benefits pending resolution of this action (Compl. ¶¶ 26, 27); a "return [of] all funds already improperly garnished or withheld" (Compl. ¶ 28); and a declaration "that any further garnishment, collection, or enforcement of the disputed overpayment absent Court authorization is unlawful." (Compl. ¶ 30).

Plaintiffs have moved for preliminary injunctive relief. (Docs. 3, 5, 19.) Defendants oppose that request (Doc. 25) and have also moved to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 26).

. . .

. . .

. . .

## II. LEGAL STANDARDS

### A. Plaintiffs' Motion for Preliminary Injunction

In order to obtain a preliminary injunction, a plaintiff must show that "(1) [he/she] is likely to succeed on the merits, (2) [he/she] is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [his/her] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008)). In support of or in opposition to such a showing, the parties may present evidence. *E.g.*, *Winter*, 555 U.S. at 21.

### B. Defendants' Motion to Dismiss

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted).

Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

The Court will begin by examining Plaintiffs' claims as brought in the Complaint, both in terms of whether Plaintiffs have sufficiently stated a legal claim to resist Defendants' Motion to Dismiss and whether Plaintiffs have demonstrated a likelihood of success on the merits as required for the Court to grant the preliminary injunctive relief they seek. Considering that Plaintiffs appear *pro se* in this matter, the Court will also examine whether the claim Plaintiffs impliedly raise in their Complaint and briefing on the present Motions has merit, which goes to whether the Court should grant them leave to amend their Complaint.[1]

As a threshold matter, under the SNAP Act, 7 U.S.C. § 2011 *et seq.*, the Court has no jurisdiction over a determination of SNAP benefits; rather, any determination of benefits, including overpayment and garnishment as raised in this case, is squarely the responsibility of relevant State—here, the State of Arizona—under 7 U.S.C. §§ 2020, 2022 and the implementing regulations, including 7 C.F.R. § 273.15. Thus, to the extent Plaintiffs seek relief in this lawsuit regarding those substantive SNAP benefits determinations, the Court dismisses such claims for a lack of subject matter jurisdiction.

In the Complaint, Plaintiffs list three claims, as identified *supra*. The first two, for declaratory and injunctive relief (Compl. ¶¶ 23, 24), are simply types of remedies related to Plaintiffs' other claims and in this instance do not form independent substantive claims. *See Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74 (1950)) ("The Declaratory Judgment Act does not

[1] The Court affords *pro se* plaintiffs the benefit of the doubt where possible when construing their pleadings. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

provide an independent jurisdictional basis for suits in federal court," but rather "only permits the district court to adopt a specific remedy when jurisdiction exists."). Plaintiffs bring their third claim under § 1983 on the basis of a violation of "Procedural due process (14th Amendment)" and "ADA rights (42 U.S.C. § 12131 *et seq.*)." (Compl. ¶ 25.) While Plaintiffs may bring a § 1983 claim based on a violation of procedural due process rights, the ADA claim for damages is a stand-alone claim, so the Court will treat it as such. *See, e.g.*, *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (concluding "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act").

**A. Section 1983 Claim**

Section 1983 grants every person a right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, § 1983 is "not itself a source of substantive rights." *Sampson v. Cnty. of L.A.*, 974 F.3d 1012, 1018 (9th Cir. 2020). To state a § 1983 claim, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States," committed by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Only individual state officials or employees sued in their *personal* capacity, qualify as "persons" within the meaning of § 1983. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Courts treat official-capacity claims for money damages as claims against the State and barred by the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Spears v. Ariz. Bd. of Regents*, 372 F. Supp. 3d 893, 923 (D. Ariz. 2019). *Ex parte Young* provides an exception to Eleventh Amendment immunity, but it only applies to "claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

As Defendants point out, in this lawsuit, Plaintiffs name Defendants only in their *official* capacity. Thus, to the extent Plaintiffs seek damages in their § 1983 claim, including a prayer for "return of all funds," the claim is barred.

And to the extent Plaintiffs do seek prospective injunctive relief against the named Defendants in their official capacity, they allege insufficient facts from which the Court can infer that these Defendants "have some connection with the enforcement of the act," as required for the *Ex Parte Young* exception to apply to Eleventh Amendment immunity. *Ex Parte Young*, 209 U.S. at 157. For this reason, the Court would dismiss Plaintiff's § 1983 claim.

**1. Procedural Due Process**

Plaintiffs' § 1983 claim premised on due process violations would fail even if they had adequately alleged that any of Defendants in their official capacity had the requisite authority to enforce the alleged act. Plaintiffs base their due process claim on allegations that certain evidence DES sent Plaintiffs was "irrelevant" (Compl. ¶ 10); Plaintiffs received multiple hearing notices (Compl. ¶ 11); DES canceled a hearing "without notice," (Compl. ¶ 16); and DES represented that Plaintiffs' submitted evidence was lost but then found (Compl. ¶ 16). However, Plaintiffs also allege that they were able to present evidence—indeed, that they were "granted additional time to gather evidence" (Compl. ¶ 14)—and their hearing proceeded on September 15, 2025 (Compl. ¶ 16). After the ALJ upheld the finding that DES had overpaid Griffith (Compl. ¶ 17) but reduced the overpayment total by $172, the evidence shows Plaintiffs timely appealed the ALJ's decision to the Appeals Board; the Appeals Board affirmed the ALJ's decision; and Plaintiffs did not appeal to the Arizona Court of Appeals, which as the Appeals Board pointed out to Plaintiffs was their right under Arizona law. (Doc. 34-1 ¶¶ 11–13, 15–17; Exs. D6, D7.)

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). Such a claim requires a plaintiff to show (1) the existence of a property or liberty interest protected by the Constitution, (2) a deprivation of the interest by government action, and (3) a lack of due process. *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008); *see also Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460

(1989) (stating that, in a § 1983 action for a procedural due process violation, the injury giving rise to the claim is complete when (1) "a liberty or property interest . . . has been interfered with by the State;" and (2) "the procedures attendant upon that deprivation were constitutionally" insufficient).

The Supreme Court has held that there is no strict formula for the due process required in an administrative proceeding. *Eldridge*, 424 U.S. at 348 ("[The] differences in the origin and function of administrative agencies preclude wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experience of courts.") (citation omitted); *see also Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018) ("It is well-established that because due process is a flexible concept, precisely what procedures the Due Process Clause requires in any given case is a function of context."(cleaned up)). Instead, the "essence of due process is the requirement that a person in jeopardy of serious loss [be given] *notice* of the case against him and *opportunity* to meet it." *Eldridge*, 424 U.S. at 348 (emphasis added) (citation omitted). "All that is necessary is that the procedure be tailored in light of the governmental and private interests that are involved, to [e]nsure that appellee is given a meaningful opportunity to present his case." *People ex rel. Babbitt v. Herndon*, 119 Ariz. 454, 457 (1978).

Here, although Plaintiffs allege minor administrative errors or hearing changes, they do not allege any facts ultimately giving rise to a lack of notice or a meaningful opportunity for them to be heard to oppose DES's finding that it had overpaid SNAP benefits to Griffith, or on any related procedural or substantive issues. Indeed, they allege they received time to gather evidence and were given notice of the September 15, 2025 hearing, which they attended and participated in. For this reason, Plaintiffs' procedural due process claim fails.

**2. *Res Judicata***

Because Plaintiffs had a full and fair opportunity to challenge DES's overpayment and garnishment determinations with regard to their SNAP benefits (*see* Doc. 34-1 Exs. D5, D6, D7), as well as any related issues, Plaintiffs are estopped from challenging them

here. A federal court must give preclusive effect to an issue decided by a state court in the same way the state court would, but "collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 94-96 (1980). Similarly, a state agency's fact-finding and legal determinations are given the same preclusive effect in federal court as in state court. *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 797-99 (1986). The principles of preclusion apply in the adjudication of most federal claims, including § 1983 claims, and the Supreme Court has carved out limited exceptions, such as for Title VII claims, which do not apply here. *Id.* at 795–96.

Under Arizona law, when a party fails to appeal a state administrative decision, that decision becomes final, and re-litigation of the underlying legal and factual issues in another court is barred by the doctrine of *res judicata* so long as the administrative process was adequate. *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999) (applying Arizona law). In *Olson*, the Arizona Board of Psychologist Examiners revoked a psychologist's license after he performed an unauthorized exorcism on a child referred to him by Child Protective Services. *Id.* at 1085. The psychologist did not appeal the Board's decision, as was his right, but instead filed an action in federal court raising claims under § 1983, § 1985, and the Religious Freedom Restoration Act. *Id.* The Ninth Circuit Court of Appeals noted that, in Arizona, if a claimant fails to timely appeal an administrative decision, the decision is "'conclusively presumed to be just, reasonable and lawful.'" *Id.* at 1086 (quoting *Gilbert v. Bd. of Med. Examiners of the State of Ariz.*, 745 P.2d 617 (Ariz. Ct. App. 1987) (superseded on other grounds by statute)). "This principle applies even to alleged constitutional errors that might have been corrected on proper application to the court which has jurisdiction of the appeal." *Id.* As a result, the court concluded that the principles of *res judicata* barred the plaintiff from bringing his claims, which were in effect an attempt to re-litigate the factual and legal issues he could have raised on appeal in state court. *Id.* at 1087.

Here, Plaintiffs could have appealed to the Arizona Court of Appeals to correct DES's alleged SNAP benefit errors as well as the alleged constitutional errors that now form the basis of their § 1983 claim, but they declined to do so. Plaintiffs fail to allege or show they were denied a full and fair opportunity to litigate the issues they now bring to this Court. *See Olson*, 188 F.3d at 1086–87. Indeed, allowing the practice of bringing claims from a state adjudication to federal court mid-stream would mean that litigants could abandon a state procedure as soon as an unfavorable decision is made to litigate the same claims and issues in federal court. *See Correa v. Nampa Sch. Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981) (noting that, "where adequate administrative procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing"). Because the Court must presume that DES's decision was just, reasonable and lawful on account of Plaintiffs' failure to appeal it in state court, Plaintiffs are barred by the doctrine of *res judicata* from litigating legal and factual issues they could have raised in the state proceedings. *See Olson*, 188 F.3d at 1086–87.

For all these reasons, the Court will dismiss Plaintiffs' § 1983 claim, and because they cannot cure the defects in this claim by amending the Complaint, the Court will dismiss this claim with prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000).

**B. ADA Claim**

Plaintiffs also bring a claim premised on violations of Title II of the ADA. (Compl. ¶ 25.) Specifically, Plaintiffs allege that Griffith has epilepsy and both Plaintiffs have "mental health conditions" and that DES did not reasonably accommodate their disabilities by providing "notice via phone or text prior to upcoming hearings," as Plaintiffs requested. (Compl. ¶¶ 20–21.) However, as noted above, Plaintiffs allege they did receive notice and had a hearing before an ALJ on September 15, 2025, in which they were able to present evidence, and they also received notice and had a subsequent hearing before the Appeals Board. (Compl. ¶ 16; Doc. 34-1 ¶¶ 10–13, 15–17, Exs. D5–D7.)

. . .

Title II of the ADA provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

42 U.S.C. § 12132. The sole manner in which Plaintiffs allege DES did not accommodate their disabilities was in the form of the hearing notice they received (Compl. ¶ 20), but they also allege they did receive notice and participated in two hearings (*e.g.*, Compl. ¶ 16). Similar to their procedural due process claim, Plaintiffs fail to show that the alleged failure to accommodate affected the notice and opportunity to be heard they were entitled to. As a result, they have failed to allege—or show a likelihood of success on the merits—that they were "excluded from participation in" or "denied the benefits of" the DES review process, as required for them to now bring a claim under Title II of the ADA. *See, e.g.*, *Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1050 (9th Cir. 1999) (finding that a school's alleged failure to grant a requested accommodation in the form of letting a student leave the clinical portion of her clerkship early to prepare for a written exam did not prejudice the student because she passed the written exam).

To the extent Plaintiffs attempt to bring their ADA claim as a § 1983 claim, although such a theory is barred when the § 1983 claim seeks to vindicate the same rights that the ADA already protects, as the Court noted *supra*, a § 1983 claim may survive if it rests on an independent constitutional basis not covered by the ADA. *See. e.g.*, *Snyder v. United States*, 2023 WL 5000736, at *6 (D. Idaho Aug. 4, 2023). Here, the alternative constitutional basis that plausibly arises from the manner in which Plaintiffs fashioned their ADA claim is procedural due process, which they explicitly raise as a claim in their Complaint and which claim the Court will dismiss for the reasons set forth *supra*.

For these reasons, Plaintiffs' ADA claim fails, and because the Court finds they cannot cure the defects in this claim by amendment, the Court will dismiss this claim with prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000).

**C. SNAP Act and Regulations**

Finally, the Court will address a claim not explicitly brought in the Complaint but fleshed out to some degree in the parties' briefs.[2] In the Complaint, Plaintiffs allege that, in February 2025, "DES unlawfully garnished Plaintiffs' state tax returns and ongoing benefits despite an open appeal and Plaintiffs' explicit requests to pause collection activity." (Compl. ¶ 14.) Moreover, Plaintiffs allege that, since November 2025, "DES has begun unlawfully garnishing benefits for the third time, including sending monthly garnishment statements that explicitly violated DES's own rules pausing collections during appeals and charging unauthorized interest." (Compl. ¶ 18.)[3]

In their briefs, the parties clarify that what Plaintiffs are referring to as "unlawful" garnishment is under the requirement in one of the federal regulations implementing the SNAP Act, 7 C.F.R. § 273.15(r)(1), which provides in relevant part: "Collection action for any claims against the household for overissuances shall be postponed until the 15-day appeal request period has elapsed, or if an appeal is requested, until the State agency upholds the decision of the local hearing authority." Plaintiffs do not explicitly bring a claim under this regulation in the Complaint, but the Court will examine whether raising such a claim in an Amended Complaint would be futile.

To begin with, Plaintiffs' claim that DES continues to recoup the SNAP benefit overpayment from Plaintiffs "unlawfully" during the pendency of the present lawsuit (*e.g.*, Compl. ¶¶ 18, 23, 30; Doc. 3 at 3) is unsupported by the plain language of the regulation. Section 273.15(r)(1) provides that claims for overissuances should be postponed only "until the State agency upholds the decision of the local hearing authority," which occurred at least as of the date of the Appeals Board decision and the lapse of the time in which

---

[2] To the extent that Plaintiffs intended to include this theory in their § 1983 claim, the Court is mindful that a plaintiff need not explicitly invoke § 1983 to seek damages from a state governmental entity so long as the plaintiff "plead[s] facts sufficient to show [the] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).

[3] As the Court stated *supra*, Defendants provide evidence that DES promptly directed DOR to release Plaintiffs' tax refund after DOR initially intercepted it (Doc. 34-1 ¶ 9), and DES refunded the $275 recoupment of SNAP benefits to Plaintiffs on April 13, 2026 (Doc. 34-1 ¶ 19).

Plaintiffs could have appealed to the Arizona Court of Appeals, or April 2026. Under the regulation, the lawsuit in this Court is neither administrative nor an appeal.[4]

As for any more explicit claim by Plaintiffs based on an alleged violation of the SNAP Act, 7 U.S.C. § 2022(b), which addresses a state agency's collection of overissuances, or one of its implementing regulations, 7 C.F.R. § 273.15(r)(1), the Court finds that the statute does not provide for a private right of action here. In a recent decision addressing a sister provision of the SNAP Act, District of Alaska Judge Sharon L. Gleason reasoned that, under the Supreme Court's guidance in *Health and Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023), and *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025)—elaborating on the "stringent and demanding test" set forth in *Gonzaga University v. Doe*, 563 U.S. 273 (2002)—no private action exists under § 2020(e) of the SNAP Act because "the statutory provisions at issue here do not clearly and unambiguously use rights-creating language." *Andrew v. Hedberg*, 2026 WL 1431090, at *8–9 (D. Alaska May 21, 2026). In the present case, § 2022(b) and the implementing regulation, § 273.15(r)(1), direct the state agency's procedures in the collection of overissuances, and § 2022(b)(2) states that these provisions guiding a state agency's collection of overissuances "shall not apply if the State agency demonstrates to the satisfaction of the Secretary that all of the [specified means of overissuance collection] are not cost effective." Similar to § 2020(e) of the SNAP Act as discussed by Judge Gleason, the provision at issue in the present lawsuit, § 2022(b), does not employ "explicit and unmistakable 'rights creating language.'" *Andrew*, 2026 WL 1431090, at *10. Plaintiffs' implied § 1983 claim for violation of this federal statute thus fails as a matter of law.

## IV. CONCLUSION

Plaintiffs have failed to state a claim in the Complaint, and because they cannot cure the defects in their claims by amending the Complaint, the Court will dismiss the Complaint with prejudice. As a result, under the *Winter* test, Plaintiffs cannot show any

---

[4] Nevertheless, the DES representative avers that DES "has not taken and will not take steps to collect all or any part of the $6,440.00 that is owed by Plaintiffs to [DES] until the action pending before this Court has been resolved." (Doc. 34-1 ¶¶ 20, 21.)

likelihood of success on the merits of their claims, and the Court will deny their request for preliminary injunctive relief. Lastly, because Plaintiffs' proposed supplemental evidence (Doc. 46) did not change the Court's analysis in this Order, the Court will deny Plaintiffs' Motion for Leave to File Supplemental Evidence.

Under the Federal Rules of Appellate Procedure, Plaintiffs may be entitled to proceed *in forma pauperis* on appeal without further authorization because this Court permitted Plaintiffs to proceed *in forma pauperis* in this action. *See* Fed. R. App. P. 24(a)(3). However, because the Court is dismissing the Complaint with prejudice, finding Plaintiffs' claims fail as a matter of law, the Court now certifies that any appeal would be frivolous and would not be taken in good faith. *See* Fed. R. App. P. 24(a)(3)(A).

**IT IS THEREFORE ORDERED** denying Plaintiffs' Motion for Preliminary Injunction (Docs. 3, 5, 19).

**IT IS FURTHER ORDERED** denying as moot Plaintiffs' "Motion for Leave to File Supplemental Evidence (Based on Materials Submitted April 28, 2026)" (Doc. 46).

**IT IS FURTHER ORDERED** granting Defendants' Motion to Dismiss (Doc. 26) and dismissing all of the claims in Plaintiff's Complaint (Doc. 1) with prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and close this case.

**IT IS FURTHER ORDERED** that Plaintiffs are not entitled to proceed *in forma pauperis* on appeal.

Dated this 15th day of September, 2026.

Honorable John J. Tuchi
United States District Judge